MISSOURI PACIFIC RAILROAD COMPANY *v*. PIPKIN.

4-3558

Opinion delivered October 22, 1934.

*Thos. B. Pryor, H. L. Ponder* and *Harry Ponder, Jr.,* for appellant.

*Miller & Yingling* and *W. R. Donham,* for appellee.

JOHNSON, C. J.  On July 17, 1931, appellee was engaged in service as a brakeman on one of appellant's freight trains operating between Poplar Bluff, Missouri, and North Little Rock, Arkansas.  This train carried interstate shipments, and was therefore engaged in interstate commerce.  In making a stop of the train at Hoxie in this State for the purpose of setting out certain freight cars which contained freight consigned to Hoxie, and was being transported in interstate commerce, appellee received the injuries here complained of.  This suit was instituted by appellee against appellant under the Federal Employers' Liability Act to compensate his alleged injuries.  In effect, the complaint alleged that the engineer on said train carelessly and negligently made

only one application of the air with full force in effecting the stop at Hoxie, when the usual and ordinary manner of effecting such stops should have been to apply the air gradually, causing the front of the train to suddenly stop, and the rear cars in said train to jam and violently run into and upon the cars ahead. That appellee was riding upon the rear platform of the caboose in a place where his duties required him to ride, and the sudden and violent stop of the train caused the caboose upon which he was riding to come to a violent and sudden stop which threw appellee against the end thereof and upon certain metal attachments upon the rear platform thereof, in such manner to cause his injuries.

The testimony in behalf of appellee tended to show that, upon arrival of the train at Hoxie, and while it was running at a rate of speed of eight or ten miles per hour, the engineer caused to be made one application of the air instead of making a gradual application thereof, which caused the front cars of the train to suddenly stop, and the rear cars and caboose to suddenly and violently jam into the cars in the front of the train, which train consisted of approximately one hundred cars. That the impact was of sufficient force to tear the bunkers loose from the sides of the caboose; that the water barrel was dislodged from its fastenings to the side of the caboose, and was thrown to the floor with such violence as to burst it into pieces; that the coal bin was torn from its fastenings and scattered the coal therein contained over the floor of the caboose. Appellee testified that, by the force of the shock and jar of the sudden and violent stop, he was thrown from his standing position on the rear platform of the caboose against the end wall thereof, and against and upon certain metal attachments thereto, and was injured thereby. He further testified that he had been engaged in railroading for the past twenty-five years, and knew the proper and customary manner in effecting such stops with similar trains, and that this train should have been stopped by leaving the throttle open and applying the air gradually or about five to seven pounds at intervals, but that this was not done by the engineer.

We shall not detail the testimony in reference to appellee's injuries or the compensation awarded therefor, as no question is presented in reference to the amount awarded if liability exists. Appellant contends that the evidence adduced in appellee's behalf is insufficient to support a verdict of liability. The evidence, in effect, is not dissimilar in any material respect from that reviewed by us in *Missouri Pacific Railroad Company* v. *Montgomery,* 186 Ark. 537, 55 S. W. (2d) 68, wherein we determined that it presented a question of fact for the consideration of the jury as to whether or not there was liability predicated upon such facts. The Montgomery case, *supra,* was presented to the Supreme Court of the United States by an application for certiorari, and a review thereof was denied. 289 U. S. 747, 53 S. Ct. 690.

A number of cases are urged upon us for consideration which are contended impair our holding in the Montgomery case, among which are *Gulf, M. & N. R. Co.* v. *Wells,* 275 U. S. 455, 48 S. Ct. 151, and *Chicago, M. St. P. Ry. Co.* v. *Coogan,* 271 U. S. 472, 46 S. Ct. 564. It may be said that the Montgomery case and the instant case may easily be distinguished from the cases cited, and it would serve no useful purpose to undertake a detailed discussion of the facts and merits of the respective cases. We believe the doctrine announced in the Montgomery case, *supra,* is sound and are not inclined to impair its effect.

To the same point appellant contends that appellee's injury, to-wit: hernia, was not caused by the sudden and violent impact of the cars; therefore it is not liable for this injury. Appellee testified that, prior to the sudden impact of this train, he was a stout, and ablebodied man, capable of doing, and did do manual labor without inconvenience, and that immediately after this impact he became nauseated and suffered severe and excruciating pain until the protrusion appeared in his abdomen a day or two later; that he was bruised across the lower part of his abdomen and in the groin by reason of the impact, and was forced to undergo an operation just a few days thereafter to correct the hernia produced thereby. Dr. Parmley testified that hernia is sometime

caused by direct trauma. True, eminent physicians for appellant controverted this testimony, but this made only a question for the jury's consideration, and its findings thereon are binding upon this appeal.

Next, it is urged that appellee assumed the risks of his alleged injuries. This contention is based primarily upon the testimony of appellee to the effect that he knew that the engineer made rough stops. On this phase of the case, the court gave to the jury, upon appellant's request, instructions number 10 and 12, as follows:

Instruction No. 10 reads as follows: "The court instructs you that, while the brakeman does not ordinarily assume the risk of injury on account of negligence on the part of his employer or fellow-servant, yet, in this case, if you find from the evidence that the engineer was in the habit of making violent and sudden stops while operating the train on which plaintiff was employed, and if you further find from the evidence that the plaintiff had knowledge of this fact, and that with this knowledge continued in the employment of the defendant with said engineer, then you are instructed that he assumed the risk of being injured on account of such violent and sudden stops as may have been made by the engineer, unless you further find that the said jar or jerk was extraordinary and unusual for said engineer to make."

Instruction No. 12 reads as follows: "The jury are instructed that, when the plaintiff entered the employment of the railroad company as a brakeman to do and perform such work as was required by him as such employee, then, in accepting such employment, he assumed all of the risks and danger incident to and connected with such employment, and, if you find from the testimony that the plaintiff's injury was occasioned from the operation of a freight train, and that the same was operated with ordinary care, and as such trains are usually handled and operated, then your verdict will be for the defendant."

In reference to the contention here made, we have stated the rule to be that assumed risk is predicated upon the knowledge of the employee of the risks to be encountered and his consent to be subject thereto. Negli-

gence on the part of a fellow-servant is not an incident of the employment; and the servant does not assume the risks thereof, unless they are obvious and patent. *Chicago, Rock Island & Pacific Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197. The testimony here shows that appellee had no warning to judge of the danger to which he was exposed by reason of the negligent act of the engineer in making only one application of the air with full force. At any rate, this was a question of fact for the jury's consideration, and their adverse finding thereon is conclusive upon this appeal.

Lastly, it is urged that reversible error was committed in the giving and refusing to give certain instructions. We have carefully considered all the instructions requested, granted, and refused, and it is our conclusion that the case was properly submitted under instructions which conform to previous opinions of this court.

The verdict of the jury, being supported by substantial testimony, must be affirmed.