BRITTON v. MERIWETHER.

Opinion delivered October 27, 1924.

1. PLEADING—AMENDMENT TO CONFORM TO EVIDENCE.—Where the parties to a partition suit testified in the suit, and it appeared that one tract intended to be partitioned was omitted from the complaint, but it was included in the decree for partition, it will be presumed that the court treated the complaint as amended to conform to the admitted facts.

2. JUDICIAL SALE—INADEQUACY OF PRICE.—Mere inadequacy of price is no ground for setting aside a judicial sale unless it is so gross as to raise a presumption of fraud or unfairness.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; affirmed.

*W. M. Ponder* and *W. E. Beloate,* for appellant.

The court erred in not setting the sale aside. 31 Ark. 272. A proceeding to correct a record by *nunc pro tunc* entry will not lie to supply errors and omissions in the original proceeding, and if there were errors or omissions in the original decree of partition, the sale thereunder was without foundation and cannot be supplied by *nunc pro tunc* entry. 159 Ark. 218.

*Cunningham & Cunningham* and *Ponder & Gibson,* for appellant.

. A court has authority at any subsequent term to correct its records by the entry *nunc pro tunc* of the judgment that was rendered at a former term. 118 Ark. 593. In the absence of fraud a sale for an inadequate price is not ground for a resale. 56 Ark. 240; 47 Ark. 93; 20 Ark. 381; 44 Ark. 502; 108 Ark. 366; 123 Ark. 523. After confirmation of a sale every presumption will be indulged in favor of its fairness. 90 Ark. 166; 118 Ark. 449; 131 Ark. 397; 131 Ark. 478. A bidder becomes a party to the sale and may be compelled to stand by the offer he has made. 77 Ark. 216.

SMITH, J. In 1920 appellants, who are the children and heirs at law of W. L. Conrey, brought suit to partition certain lands owned by their father, a part of the lands being owned by him in severalty, and others as a tenant in common with T. J. Sharum. The complaint described the lands owned by their father in severalty, and alleged that each of the plaintiffs was the owner of an undivided third interest; and the complaint also described the lands owned by Sharum and their father as tenants in common. The first mentioned lands contained 120 acres, and the last mentioned contained 360 acres, and all of it was in the same section.

There was an error in the description of this land, as it appeared in the complaint, and, as a result of this error, forty acres of the land owned by Sharum and the plaintiffs' ancestor was omitted from the complaint. There was never any controversy about the respective interests of the parties or the description of the land which they owned.

Sharum filed no answer, but personally appeared in court, where he and other witnesses testified at the hearing then had, and the court found that the lands could not be partitioned in kind, so a sale was ordered, and a commissioner was appointed to make the sale. The decree ordering the sale correctly described the lands, but did not adjudge the respective interests of the parties. This decree was rendered May 31, 1921.

A sale was made by the commissioner on July 16, 1921, pursuant to the directions of the decree of sale, and at this sale the land was first offered in forty-acre tracts, and Sharum was the highest bidder for each tract, his bids totaling $2,250. After thus offering the land for sale, the commissioner offered all of it as a single tract, and Sharum was again the highest bidder, his bid being $2,250.

The commissioner reported the sale to the court as having been made on a credit of three months, but he did not take the note of the purchaser as the decree directed. When the commissioner presented the certificate of purchase to Sharum, he declined to execute a note, stating that he owned a half interest in most of the land, and had paid the taxes on all of it, and that the title to a part of the land might not be good, but he did pay the commissioner $900 in cash.

The report of the commissioner came on for confirmation, and was approved by the court on the 3rd day of the April term, 1922. The commissioner was directed to execute a deed, and this he did, and the same was acknowledged in open court.

It appears that the various orders of the court above referred to were either never prepared by the attorneys for the clerk to enter or were not entered of record by the clerk if prepared, and thus the matter stood until the April, 1923, term of the court, when the executors of Sharum, who had died in the meantime, filed petitions for the entry, *nunc pro tunc,* of the court orders above referred to.

There appears to be little controversy about the facts stated above; but there is considerable conflict as to the value of the lands.

The heirs of Conrey, who were the plaintiffs in the original suit, filed answers to the various petitions for *nunc pro tunc* orders, and also filed exceptions to the confirmation of the commissioner's report, and offered testimony tending to show that the lands had sold for a grossly inadequate price. This testimony related,

however, to certain specific tracts of land, and not to the whole of it.

It is now insisted that the court did not acquire jurisdiction of the forty-acre tract omitted from the complaint, and that the sale to Sharum was void because he abandoned his purchase by failing to execute the note and by not offering to comply with his bid until the filing of the petitions for the *nunc pro tunc* orders.

The court made the *nunc pro tunc* orders as prayed, and this appeal is from that decree.

We think the court had jurisdiction to order the sale of the land omitted from the complaint. The court found that the parties appeared and testified in open court. The appellants were the plaintiffs there. They prayed for the partition or sale of the lands. There was no dispute or uncertainty about the description of the lands or the respective interests of the parties, and the decree of sale for partition correctly described the lands. Evidently the court treated the complaint as amended to conform to the admitted facts as shown by the testimony then heard.

The court found that the respective interests of the parties were adjudged as required by § 8100, C. & M. Digest, and that the report of the sale had been duly approved and confirmed, and that the commissioner had been directed to execute a deed, and that the deed had been approved, and it was ordered that decrees be entered *nunc pro tunc* showing these facts.

Pending the hearing of these petitions, the attorneys for the executor waived in open court any claim for the taxes paid by Sharum on the interest of his co-tenant, and the balance due on the purchase price was tendered into court, whereupon the court directed that the deed, which had been previously executed and approved but not delivered, should be then delivered, and this was done.

We find nothing in this proceeding which calls for the reversal of the decree of the court below. In making these *nunc pro tunc* orders the court merely directed

that a proper record be made of what had been previously adjudged.   Sharum should, of course, have been required to execute the note as ordered by the original decree of sale; but there is nothing in the testimony to show that he abandoned his purchase.   His payment of $900 to the commissioner refutes that contention.   He should, of course, have allowed the court to adjudge what part of his bid should be finally paid after allowing him credit for the taxes; but these were questions which should have been raised when the report of the commissioner came on for confirmation.   Evidently no credit for these tax payments was allowed Sharum when the report of sale was confirmed, but he waived this omission by agreeing in open court that no account should be taken of them.   Upon payment of the balance due on Sharum's bid, which was tendered and paid into court, he became entitled to the delivery of the deed which the court had previously approved.

Upon the question of inadequacy of price, it suffices to say that the testimony does not show such gross inadequacy of price as to raise a presumption of fraud or unfairness, even though this question had been raised when the report of sale came on for confirmation, as it should have been.   *Gleason* v. *Boone,* 123 Ark. 523.

No error appears, so the decree directing the entry of *nunc pro tunc* orders is affirmed.